UNITED STATES BANKRUPTCY COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| In re: | ) | Chapter 13 |
| | ) | |
| Andrea PERRON, and | ) | Case No. 11-20769 |
| Patrick PERRON, | ) | |
| Debtors | ) | |
| | ) | |

**Memorandum of Decision on Debtors' Objection to Claim**

Introduction

Chapter 13 debtors Andrea and Patrick Perron have objected to the proof of claim filed by Arch Bay Holdings, LLC - Series 2010A ("Arch Bay"). In its latest edition, the twice amended proof asserts a claim of $248,208.71, secured by a mortgage on the debtors' residence. The Perrons insist that Arch Bay has not demonstrated its to enforce the claim and that the amount it claims is inflated.

Aside from Arch Bay's amended proofs of claim, the record is barren. The debtors contend that, because the series of amended claims are inconsistent, Arch Bay must be put to its proof. In addition, they argue that the content of the second amended claim is insufficient to entitle Arch Bay to the amount it seeks. The Perrons assert that the claim cannot exceed $238,332.32.

As explained in the pages that follow, I conclude that the debtors have conceded Arch Bay's contractual standing to make its claim; that Arch Bay's second amended proof of claim, though filed just shortly before the final hearing convened, carries evidentiary weight; and that the content of the second amended proof sustains Arch Bay's claim in the amount it seeks. Thus, the debtors' objection will be overruled.

Procedural Background

Arch Bay timely filed a proof of claim, asserting a total amount of $281,837.33, secured by a residential mortgage. The debtors objected, challenging Arch Bay's interest in the claim and the claim's accuracy. Arch Bay responded by filing an amended proof of claim, reducing the amount due to $248,833.29. After discovery and continuances, a final hearing on the claim objection was set. On the morning of the hearing, Arch Bay filed its second amended proof, further reducing its claim to $248,208.71.

At the final hearing, the debtors offered no evidence independent of Arch Bay's serial proofs. Offering nothing extrinsic to it, Arch Bay stood on its second amended proof of claim.

Discussion

1. Does Arch Bay Hold the Claim?

The Perrons spend a good deal of effort attacking Arch Bay's contractual standing to assert its secured claim. This is puzzling. Their plan explicitly provides that current mortgage payments be made to Arch Bay. See Chapter 13 Plan at §3(B)(1) (Docket No. 11); Interim Order Confirming Chapter 13 Plan and Setting Deadlines for Certain Actions at §1(E) (Docket No. 58). Arch Bay has repeatedly represented to the court, without contradiction from the Perrons' counsel, that disputes regarding its right to enforce the note and mortgage that underlie its claim had been resolved. At the final hearing, although the Perrons' counsel argued her objection at length, she never argued that Arch Bay did not have the right to assert its claim. Only in post argument briefing was the issue posed.

Under these circumstances, the Perrons have conceded Arch Bay's entitlement to press its claim. Moreover, even if the matter of contractual standing (in this instance, a matter of

determining the merits of the claim) were conflated with jurisdictional standing, so that it could not be waived, see In re Spenlinhauer, 261 F.3d 113 (C.A.1 (Me.), 2001), the second amended proof of claim adequately evidences Arch Bay's rights to the claim.[1]

2.  The Weight Accorded Rules - Compliant Proofs of Claim - Generally

    A proof of claim filed in accordance with the Federal Rules of Bankruptcy Procedure constitutes "prima facie evidence of the validity and amount of the claim." Bankruptcy Code §502(a);[2] Fed. R. Bankr. P. 3001(f).  For a claim secured by a debtor's property, and more particularly a debtor's residence, the rule requires that specific information and documentation be appended to the proof in an approved format.  Fed. R. Bankr. P. 3001(c), (d) (requiring itemized statements of, e.g., interest, fees, expenses and other charges; statement of cure amount; escrow account statement; evidence of perfection); Official Form 10.  Failure to include the required information may result in a ruling barring the claimant from presenting evidence of the omitted items and charges in any contested matter or adversary proceeding.  Fed. R. Bankr. P. 3001(c)(2)(D).

Presumptive validity adheres to the proof of claim until it is met with an objection supported by "substantial evidence." In re Hemingway Transport, Inc., 993 F.2d 915, 925 (1st Cir. 1993), cert. denied, 510 U.S. 914, 114 S.Ct. 303 (1993); In re Allegheny Intern., Inc., 954 F.2d 167, 173 (3rd Cir.1992); In re Organogenesis Inc., 316 B.R. 574, 583 (Bkrtcy.D.Mass.,

---

[1] The evidentiary effect of the second-amended claim is discussed in detail infra at §3.  Issues surrounding a secured party's right to enforce a note and mortgage are often denominated issues of "standing."  In a context such as this, the label can be misleading.  Arch Bay is currently receiving payments under the debtors' plan.  No one who held the note and mortgage antecedent to Arch Bay has claimed that Arch Bay has no right to enforce it.  If the debtors' objection is sustained, Arch Bay will suffer pecuniary loss.  Thus, in the purest sense, it has "case or controversy" standing to oppose the debtors in this contested matter.  See In re Spenlinhauer, supra, 261 F.3d at 119.

[2] Unless otherwise indicated, citations to statutory sections are to the Bankruptcy Code of 1978 ("Bankruptcy Code" or "Code"), as amended, 11 U.S.C. §101, et seq.

2004). "Substantial evidence" entails more than bare assertions of error. See In re Pan, 209 B.R. 152, 156 (Bkrtcy.D.Mass., 1997) (citing Allegheny, 954 F.2d at 173 ("[T]he objector must produce evidence equal in force to the prima facie case.")) It consists of evidentiary-quality material which, if accepted, would qualify or contradict the claimants asserted rights.[3] Allegheny, 954 F.2d at 173 (the objector must produce evidence which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency).[4]

3.  Serial, Amended Proofs

Here, the Perrons do not contend that Arch Bay's proofs of claim fail to meet Rule 3001's requirements.  Rather, they assert that, because Arch Bay has filed its proof in an original, an amended, and a second amended version, it has "admitted" inaccuracies; that such admissions constitute "substantial evidence" supporting their objection; and, therefore, that the proofs of claim, most notably the second amended proof, provide *no evidentiary support* for Arch Bay's claim.  Thus, they argue, Arch Bay must present evidence independent of its proof of claim to prevail.  Citing In re Horowitz, the Perrons argue that unexplained differences between or among serial editions of a proof of claim are "sufficient" to show error and, therefore, to shift the burden of proof to the creditor. 2008 WL 5115224 (Bkrtcy.D.D.C. 2008). At the same time, however, the Perrons concede that a debt is owed.  They contend that it can be "no more than $238,332.32."

---

[3] I note that the Perrons' brief alleges that one person whose name appears in Arch Bay's documentation is "the GMAC robo-signer."  There is no record evidence that the person named is the same who has been so identified in another case or cases or that, if he were the same person, he executed documents pertinent to this claim inappropriately or without authority.

[4] In this instance, the procedural paradigm articulated by FRCP 3001(f) is consistent with Maine state law addressing the burdens of proof underlying the claim. Cf. Raleigh v. Ill. Dep. Of Rev., 530 U.S. 15, 120 S.Ct. 1951 (2000).

The Perrons cannot seriously assert that Arch Bay's claim is utterly unsupported simply because it has been twice amended. What is really going on is that, although they concede the "validity" of the claim and that the claim is accurate up to a certain "amount," they are contending that the proof of claim carries no evidentiary weight beyond the amount they are willing to admit is due on their mortgage. This is a difficult point to make effectively where, as here, the amended proof includes the information prescribed by rule. It amounts to asserting Arch Bay's proof of claim is *prima facie* evidence only of the amount the debtors concede they owe. That notion simply does not comport with the concept of *"prima facie"* (sufficient on its face) validity.

I do agree with the Perrons that, in some instances, late-filed claim amendments may make mischief. A creditor is generally free to amend its proof of claim. <u>Gens v. Resolution Trust Corp.</u>, 112 F.3d 569, 575 (1st Cir. (Mass.) 1997) (leave to amend a POC should be freely given when justice so requires). However, it is altogether possible that, in the face of a claims objection, a creditor may delay amending its proof until the eve of trial, placing the objecting debtor at procedural disadvantage. In such cases, a court may exercise its discretion to consider the claims contest as one in which the adversary rule governing amendments to pleadings applies, and, under appropriate circumstances, deny the creditor leave to amend its proof of claim. See <u>In re Gilbreath</u>, 395 B.R. 356, 365 (Bkrtcy.S.D.Tex. 2008) (invoking Fed. R. Bankr. P. 9014(c) & 7015 and Fed. R. Civ. P. 15).[5]

There may be instances in which a debtor produces substantial evidence in opposition to a claim and approaches trial with the expectation that the creditor will be put to its proof, only to

---

[5] FRBP 9014(c) states:
    Except as otherwise provided in this rule, and unless the court directs otherwise, the following rules shall apply: 7009, 7017, 7021, 7025, 7026, 7028-7037, 7041, 7052, 7054-7056, 7064, 7069

encounter a late-filed, rule-compliant amended proof markedly at odds with its prior versions. In such instances, fairness may well require that leave to amend be sought and, perhaps, denied, or that other procedural relief appropriate to fair process be ordered. Fed. R. Bankr. P. 7015(a); Fed. R. Civ. P. 15(a).

This is not such a case. To begin, the Perrons have not invoked the rules to object to Arch Bay's amendments or to require that it seek and obtain leave to amend. They merely argue that the second amended proof of claim should not count for what it is because it was filed shortly before the final hearing. Tracking the content of the proofs at issue, however, it is impossible to see Arch Bay as having attempted to game the process in an effort to place the Perrons at a disadvantage. When the Perrons first objected, Arch Bay reviewed its records and, in the first amended proof, reduced its claim substantially, apparently accepting much of what the Perrons had contended, i.e. that certain amounts were inaccurately tallied and possibly double-counted. The second amended proof of claim simply recalculated the interest due, based on a loan modification that reduced the interest rate. Each instance of amendment reduced the claim, recognized and corrected past oversights, and *reduced* the scope of the claims dispute. The changes were neither unfair nor unexplained. Cf. In re Horowitz, 2008 WL 5115224.[6]

4. Specific Objections to the Second Amended Proof of Claim

Under these circumstances, I cannot accord Arch Bay's second amended proof of claim any less import than Fed. R. Bankr. P. 3001 bestows upon it - *prima facie* evidence of the validity and amount of its claim. The Perrons have offered no evidence, let alone substantial

---

and 7071. The court may at any stage in a particular matter direct that one or more of the other rules in Part VII shall apply.

[6] It would be an unhappy development if creditors who amended their claims responsibly in an effort to reduce or eliminate disputes were penalized for doing so.

evidence, that would deny it that status. As a consequence, their unsupported objection that Arch Bay has not "proved" its entitlement to fees and charges properly listed in its proof of claim is hollow. Arch Bay disclosed the fees and charges as required. The rules compel it to do no more. The charges and fees it listed (i.e. "appraisal," "property inspection") have not changed in the course of amendments and there is nothing in their amount that is facially unreasonable. The proof also included the required escrow account statement. The Perrons had every opportunity to investigate the basis for the amount claimed, but have produced no evidence that belies its validity or the Perrons' responsibility for it.

The Perrons assert that the arrearages and late fees Arch Bay seeks are incorrectly calculated. The basis for the dispute appears to be that the Perrons claim to have missed only twenty-five payments, rather than the twenty-six missed payments Arch Bay's proof of claim (including the required payment history) reveals. Again, the Perrons provide argument, not evidence (not even an affidavit detailing a different history) to meet the proof.

For these reasons, the Perrons' general and specific fact-based objections to Arch Bay's second-amended proof of claim are overruled.


5. Modification and Escrow

Even accepting Arch Bay's second-amended proof as unchallenged evidence of its claim, there remains one issue to address. All agree that the Perrons' mortgage note was modified by agreement, effective January 1, 2009. The modification stated that, as of that date, the principal amount payable under the promissory note secured by their residential mortgage was $208,557.82. Interest was reduced to 6.5% through December 2013, with staged increases thereafter.

The Perrons contend that the escrow arrearages that existed prior to execution of a loan modification were "rolled up" into the principal amount set by the modification. "Any escrow balances alleged [sic] owed at that time either were or should have been included in this [restated] principal balance."[7] To the extent that Arch Bay seeks payment of such arrearages in addition to the principal stated in the modification, they claim it has no right to do so.

This issue is a matter of law. Do the documents appended to Arch Bay's proof of claim entitle it to the sums it seeks? The second-amended proof of claim's operation as *prima facie* evidence does not bar this inquiry. Just as a pleading met with default must demonstrate the pleader's entitlement to the relief it seeks, cf. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553-54 (1986); In re Poor, 219 B.R. 332 (Bkrtcy.D.Me. 1998), an unrebutted proof must evidence lawful entitlement to what it claims. See In re Plourde, 418 B.R. 495, 504 n.12 (1st Cir.BAP (N.H.), 2009); In re Long, 353 B.R. 1, 13 (Bkrtcy.D.Mass. 2006); In re Burkett, 329 B.R. 820, 827 (Bkrtcy.S.D.Ohio 2005).

The modification agreement makes clear that it operates only to set the principal owed and to modify the manner of paying the note. It includes a savings clause to the effect that, other than as specifically provided, the modification leaves unchanged other terms of the note and the mortgage. It nowhere addresses escrow payments - and those payments arise exclusively under the terms of the mortgage. The only changes made to the mortgage were the necessary consequences of the change in the note's repayment terms. See Claim 9-1; Claim 9-3.

Thus, having reviewed the merits of the Perrons' legal argument that escrow arrearages existing prior to January 1, 2009, were forgiven by their loan modification of that date, I conclude the argument is without merit.

Conclusion

---

[7] Debtors' Brief, Docket No. 82, at 4.

For the reasons set forth above, the Perrons' objections to Arch Bay's claim are overruled. The claim is allowed as a secured claim in the amount stated in the second-amended proof. A separate order consistent with this determination will enter forthwith.

| | |
|---|---|
| June 29, 2012 | /s/ James B. Haines, Jr. |
| Date | James B. Haines, Jr.<br>U.S. Bankruptcy Judge |